UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| REBEKAH JOY BREYER, an individual, | Case No. 3:17-cv-0036-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| PACIFIC UNIVERSITY, a domestic nonprofit corporation, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Rebekah Joy Breyer ("Breyer") is a person with cerebral palsy, a physical disability. Breyer was a student in defendant Pacific University's ("Pacific") graduate school for two months. Breyer alleges she withdrew from Pacific because of Pacific's discriminatory conduct. Breyer now asserts violations of state and federal anti-discrimination statutes and contract-based claims. Pacific moves to dismiss Breyer's state-law discrimination claim and contract claim, arguing that both claims are insufficient as a matter of law. (ECF No. 8.) The court grants Pacific's motion, with

leave to amend.[1]

## Background

The following factual allegations appear in the complaint and, for the purposes of this motion to dismiss, are taken as true. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir.2009). Plaintiff Rebekah Joy Breyer ("Breyer") is a person with cerebral palsy, a physical disability affecting her neurological system, musculoskeletal function, and motor skills. (Compl. ¶¶ 11–12.) Prior to the events giving rise to this lawsuit, Breyer completed a Master's Degree at Colorado State University ("CSU"). (*Id.* ¶¶ 1, 18.) Breyer applied for and was offered admission to defendant Pacific University's ("Pacific") doctoral program in psychology. (*Id.* ¶¶ 2, 13, 20.) Breyer alleges that Pacific's professors and administrators discriminated against her by consistently questioning her ability to complete the doctoral program based on her perceived limitations. (*Id.* ¶ 2.)

Pacific's Doctor of Psychology program is part of the School of Professional Psychology ("SPP") at Pacific. (Compl. ¶ 2.) During the admissions process, Breyer faced questions about her disability which she perceived as discriminatory, including a supplemental phone interview inquiring about her physical abilities and the perceived difficulties Breyer would face in the program. (*Id.* ¶¶ 16–18.) Pacific's representatives communicated a set of "essential job functions" required of SPP students. (*Id.* ¶¶ 17–18.) Breyer reviewed the "essential functions" with her thesis advisor at CSU, and determined she could perform them. (*Id.* ¶ 18.) Her advisor also questioned whether all of the listed functions were truly essential. (*Id.*) Breyer accepted Pacific's offer of admission and began

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c).

classes. (*Id.* ¶ 21.) She also requested a meeting with the SPP Director of Admissions about the discriminatory aspects of the admissions process. (*Id.*) Breyer alleges she received multiple written documents containing commitments by Pacific to provide her with an equal opportunity to complete the doctoral program and to not discriminate against her, including enrollment agreements, course catalogs, and student handbooks. (*Id.* ¶ 23.)

Breyer continued to face discriminatory conduct after she matriculated at Pacific. SPP administrators expressed a lack of training in or knowledge of the ADA. (*Id.* ¶ 26.) A professor asked Breyer to explain her disability to classmates, which Breyer declined to do. (*Id.* ¶¶ 27–28.) Breyer complained to an administrator about the professor's request and reiterated her complaints about the admissions process. (*Id.* ¶ 27.) In a subsequent meeting with administrators, Breyer requested ADA training for SPP staff to prevent similar incidents in the future. (*Id.* ¶ 28.) The administrators were noncommittal about future training. (*Id.*)

After Breyer expressed her displeasure about Pacific's treatment of her disability, SPP administrators summoned Breyer to a meeting. (Compl. ¶ 30.) Breyer again complained about the discriminatory treatment she experienced when applying to and while attending classes at Pacific. (*Id.*) The administrators did not address Breyer's complaints. (*Id.*) Instead, the administrators questioned whether Breyer could complete the doctoral program due to her disability and the limitations which the administrators perceived Breyer as having, without discussing whether Pacific could offer accommodations to Breyer. (*Id.*) The administrators also suggested that Breyer consider other career paths. (*Id.*)

Breyer again complained to professors and administrators at Pacific regarding their discriminatory conduct. (Compl. ¶ 31.) She asked Pacific's employees to stop questioning her

abilities and to work with her to make any needed adjustments to the program. (*Id.*) Breyer requested another meeting to address the professors and administrator's concerns regarding her disability. (*Id.* ¶ 32.) The Director of Clinical Training for the SPP attended the meeting, and stated that she would not feel comfortable recommending Breyer for a practicum placement because of Breyer's perceived limitations. (*Id.* ¶ 33.) Breyer requested an assistant as an accommodation in administering standardized psychological assessments. (*Id.*) A week later, Pacific's administrators informed Breyer that she would have to bear the cost of her requested accommodation. (*Id.* ¶ 34.) Breyer could not afford to pay for an assistant. (*Id.*) Breyer believed that Pacific, through its employees, wished Breyer to withdraw from the program. (*Id.*) Breyer withdrew from the SPP shortly after being informed she would have to pay for her own accommodations. (*Id.* ¶ 35.)

*Legal Standard*

Dismissal for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) is appropriate when "the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). Rule 8 requires that complaints and counterclaims in federal court consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings need not contain detailed factual allegations, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a claim "may proceed even if it strikes a savvy judge that actual proof of [necessary] facts is improbable," and the plaintiff is unlikely to succeed on the merits. *Id.* at 556. Legal conclusions in a complaint or counterclaim are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The court generally must "accept all allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013) (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)). On a motion to dismiss for failure to state a claim, the court may consider only the pleadings themselves, exhibits that are physically attached to the complaint or counterclaim, and matters of which the court may take judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam). The court is not bound to accept as true allegations contradicted by "matters properly subject to judicial notice or by exhibit[s]" attached to the complaint or counterclaim. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g* 275 F.3d 1187.

*Analysis*

Pacific moves to dismiss two of Breyer's claims. First, Pacific seeks dismissal of Breyer's state-law claim for public-accommodation discrimination. Pacific argues it is not a public accommodation because it does not offer services to the general public. Second, Pacific seeks dismissal of Breyer's breach of contract claim because the existence and terms of a contract are insufficiently alleged, any economic damages result from Breyer's voluntary withdrawal, and lost wages are unduly speculative.

I. Oregon public-accommodation claim.

Under ORS § 659A.142(4), a place of public accommodation may not "make any distinction, discrimination, or restriction because a customer or patron is a person with a disability." Oregon law defines "place of public accommodation" to include "[a]ny place or service offering to the public accommodations, advantages, facilities or privileges whether in the nature of goods, services, lodgings, amusements, transportation or otherwise." OR. REV. STAT. § 659A.400(1)(a). The

statutory definition excludes "[a]n institution, bona fide club or place of accommodation that is in its nature distinctly private." *Id*. § 659A.400(2)(e). Oregon appellate courts have held that an entity may be *de facto* open to the public despite being nominally private if the membership criteria are so non-selective "that they are effectively public" entities. *Lahmann v. Grand Aerie of Fraternal Order of Eagles*, 180 Or. App. 420, 429 (2002) ("*Lahmann I*"); *Lloyds Lions Club v. Int'l Ass'n of Lions Clubs*, 81 Or. App. 151, 157 (2002).

To determine whether a purportedly private entity is a place of public accommodation, Oregon courts apply a two-step analysis. *See Vejo v. Portland Public Sch.*, 204 F. Supp. 3d 1149, 1167 (D. Or. 2016) (Aiken, J.) (summarizing cases). "First, the court must ask whether the entity is a 'business or commercial enterprise.' If so, the court must determine whether the entity's 'membership policies are so unselective that the organization can fairly be said to offer its services to the public.'" *Id.* (citations omitted). Pacific does not dispute that it is a commercial enterprise within the meaning of the statute. (Mot. at 3.) Instead, Pacific contends it is not a place of public accommodation because of its admissions policies. Breyer disagrees, relying on the legislative history of the statute to assert a narrower conception of distinctively private entities.

Prior decisions of courts in this district support Pacific's position. In *Vejo*, Judge Aiken held that Lewis & Clark's graduate program was not a public accommodation because it had selective admissions criteria. *Vejo*, 204 F. Supp. 3d. at 1168. Judge Aiken concluded that an entity with an application process and selection criteria does not offer its services to the public. *Id.* Similarly, in *Abukhalaf v. Morrison Child & Family Services*, No CV 08-345-HU, 2009 WL 4067274, at *6–7 (D. Or. Nov. 20, 2009), Judge Redden adopted Judge Hubel's conclusion that a foster-parent recruiting agency was not a public accommodation because applicants could become foster parents

only through a selective and discretionary application process. The *Abukhalaf* decision relied on an Oregon Court of Appeals case holding that a wholesaler was not a public accommodation because it did not engage in sales to the public at large. *Abukhalaf*, 2009 WL 4067274, at *7 (citing *Graham v. Kold Kist Beverage Ice, Inc.*, 43 Or. App. 1037, 1042 (1979)). *Vejo* and *Abukhalaf* were both summary-judgment rulings and both decisions show that an entity offering services subject to a selective and discretionary application process are not public accommodations under ORS § 659A.142.

Breyer, conceding that case law exempts entities with selective, discretionary application processes from Oregon's public-accommodation law, argues that legislative history supports her position, but her reliance on legislative history is inapposite. As Breyer acknowledges, adopting her proposed construction of "public accommodation" would require this court to conclude that *Lahmann I* and *Lahmann II* were wrongly decided. (Resp. (ECF No. 13) at 18.) Such a ruling would be improper for a federal court interpreting state law. Furthermore, the legislative history does not show a legislative intent to define "public accommodation" to include academic programs subject to a selective, discretionary application process. Breyer cannot point to any plain legislative intent to define as "public accommodations" academic programs with genuinely selective, discretionary admissions criteria. Additionally, the legislature has revised ORS § 659A.400 since the *Lahmann* cases, implicitly adopting their holdings as consistent with the statutory text. *Weber v. Weber*, 337 Or. 55, 67 (2004) (when enacting or modifying statutes, legislature is presumptively aware of prior judicial interpretations of relevant statutes).

Under the rule shown in *Vejo* and *Abukhalaf*, Breyer's allegations establish that Pacific's doctoral program is not a public accommodation. Breyer alleges that she had to submit an

application and attend an in-person interview where faculty interviewers rated candidates. (Compl. ¶¶ 13–14.) Breyer also alleges that an admissions committee decided whether to admit candidates. (*Id.* ¶ 19.) The admissions process is selective and discretionary, as was the selection process for foster parents in *Abukhalaf*. *See Abukhalaf*, 2009 WL 4067274, at *7 (requiring training program, medical report, financial requirements, and a background check). As construed by Oregon and federal courts, ORS § 659A.400 does not extend to services and opportunities subject to a genuinely selective application requirement. *Cf. Lahmann I*, 180 Or. App. 429 (membership was *de facto* open to the public when all or nearly all applicants were accepted); *Lahmann v. Grand Aerie of Fraternal Order of Eagles*, 202 Or. App. 123, 131 (2005) (declining reconsideration of the conclusion in *Lahmann I*) ("*Lahmann II*"). Although Breyer contends that the selectiveness of Pacific's academic programs is an issue of fact, Breyer's factual allegations establish that the doctoral program's admissions policy is sufficiently selective that the program is not effectively open to the public. *Lahmann II*, 202 Or. App. at 131 n.3 (stating, in response to a dissenting opinion, that "whether an organization with a nonselective admission policy can be called 'distinctly private' for purposes of the act" is a question of law).

In sum, ORS § 659A.400's definition of "public accommodation" applies to entities offering goods and services to the general public, and excludes entities that offer services or opportunities on a genuinely selective, discretionary basis. A selective graduate school is not a public accommodation because it offers educational services subject to a selective, discretionary admissions process rather than to the general public. Put differently, Pacific is not a public accommodation because it does not offer doctorate degrees to the general public without qualification. Accordingly, Pacific's motion to dismiss Breyer's state-law discrimination claim is granted. Moreover, because

Breyer alleged facts in her initial complaint that are fatal to her claim, she cannot cure the legal deficiency in her state-law discrimination claim through amendment. *See Gingery v. City of Glendale*, 831 F.3d 1222, 1231 (9th Cir. 2016) (dismissal without leave to amend is appropriate where amendment could not cure the deficiency in a claim). Breyer is therefore denied leave to amend as to her state-law discrimination claim.

II. Breach of contract.

Pacific also seeks to dismiss Breyer's contractual claim, citing cases that rejected similar contractual claims based on student handbooks. Oregon contract law governs this claim. The relationship between a student and a college is a contractual relationship under Oregon law. *Vejo*, 204 F. Supp. 3d at 1175. Statements in course catalogs, student handbooks, and similar documents may establish terms of the contractual agreement. *Tate v. N. Pac. Coll.*, 70 Or. 160, 165 (1914) (course catalog stating degree requirements is a contract between college and student, which student accepts by matriculation); *see also Dauven v. George Fox Univ.*, No. CV 09-305-PK, 2010 WL 6089077, at * 16 (D. Or. Dec. 3, 2010) ("Oregon law recognizes that a student and a private university may have a contractual relationship based on the terms contained in publications that the university provides to the student."). Whether written materials that a college provides to a student are part of a contract is a fact-intensive inquiry. *See, e.g.*, *Vejo*, 204 F. Supp. 3d at 1175 ("[T]he enforceability of provisions in handbooks and catalogs depends on the facts of each case."); *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1325–26 (D. Or. 2014) (Panner, J.) (concluding that a disclaimer in a student handbook precluded enforcement of the student handbook). To allege the enforceability of written statements, Breyer must allege that Pacific's "communications and overt acts suggest it manifested intent to be bound" by the statements and policies in its written documents,

an issue of fact. *Vejo*, 204 F. Supp. 3d at 1175 (quoting *Kabil Devs. Corp. v. Mignot*, 279 Or. 151 (1977)) (internal quotation marks omitted).

Here, Breyer alleges that various written documents constituted promises to not discriminate against Breyer and to allow her an equal opportunity to complete the doctoral program. (Compl. ¶¶ 23, 61.) Breyer further alleges that she accepted Pacific's promises and paid consideration in the form of tuition. (*Id.* ¶ 62.) These factual allegations are insufficient to plausibly allege that Pacific's commitments of non-discrimination and equal opportunity to complete academic programs are part of the contractual relationship between Breyer and Pacific.

*A. A student–college contract may include the terms of generally available documents.*

There is no requirement that contractual terms arise from a specific, individualized agreement between the student and the college. In *Vejo*, Judge Aiken found that a non-discrimination statement in a course catalog could define the terms of a contractual relationship. *Vejo*, 204 F. Supp. 3d at 1176. While an individualized agreement can also define the contractual relationship between a student and a college, Oregon law does not require an individualized agreement. *Cf. Bird v. Lewis & Clark Coll.*, 104 F. Supp. 2d 1271, 1276–77 (D. Or. 2000) (Aiken, J.) (considering a specific, individualized agreement to provide accommodations for a disability during a study-abroad program).

*B. The disclaimer issue is not properly before the court.*

While the issue of a disclaimer arose in the briefing, the issue is not properly before the court. Breyer's complaint does not mention any disclaimers and Pacific did not submit any student handbook, course catalog, or similar document under the incorporation-by-reference doctrine. *Cf. Gibson*, 66 F. Supp. 3d at 1324 n.1 (considering a student handbook containing a disclaimer under

the incorporation-by-reference doctrine).

        *C. Breyer insufficiently identifies the allegedly breached promises.*

Breyer's identification of promises and documents, however, is insufficient. A claim for the breach of a student-college contract requires identification of "an identifiable contractual promise that the defendant failed to honor." *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014) (Panner, J.) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir. 1992)). Breyer fails to do so. She alleges the existence of guarantees of non-discrimination and equal opportunity to complete the doctoral program, but does so generally and without identifying the documents in which the promises appeared. (Compl. ¶ 23, 61.) Breyer alleges only general categories of documents — admission and enrollment agreements, student handbooks, and course catalogs, among others — which might contain promises to not discriminate or to provide an equal opportunity. (*Id.*) Breyer's allegations are insufficient to allow Pacific to defend against her breach-of-contract claim. At oral argument, counsel for Breyer represented that she could specifically identify the documents and promises which Breyer allegedly relied on. Accordingly, the court grants Pacific's motion to dismiss as to the breach-of-contract claim, with leave to amend.

III. Breyer's alleged economic damages for breach of contract are viable.

Pacific alternatively seeks dismissal of Breyer's breach-of-contract claim based on her claims for economic damages. Because counsel for Breyer indicated intent to file an amended complaint remedying its factual deficiency, the court will address Pacific's other objection to Breyer's breach-of-contract claim. Breyer seeks reimbursement for the tuition she paid and lost wages due to her inability to complete the program. Pacific argues that, because Breyer withdrew from the program, Pacific was not the cause of Breyer's damages. Additionally, Pacific argues that lost wages for

Breyer's inability to work as a psychologist are unduly speculative. In response, Breyer contends that Pacific constructively expelled her, seeking an extension of the constructive-discharge doctrine from the employment-law context. Breyer alternatively argues that Pacific's conduct materially breached the contract, allowing her to cease performance and file a lawsuit.

*A. Constructive expulsion*.

Oregon law recognizes constructive discharge as a basis for wrongful-termination claims, although the doctrine's application to contract-based employment claims is unclear. *See Holmes v. Willamette Univ.*, 157 Or. App. 703, 715 (1998) (expressly reserving decision on whether constructive discharge might support a breach-of-contract claim in the employment context). Breyer does not offer, nor can the court find, any support for applying this employment-law doctrine to a contractual claim between a student and college, and such an extension of Oregon law would be inappropriate for a federal court. Breyer's breach-of-contract claim cannot depend on a constructive-expulsion theory.

*B. Material breach*.

Breyer also argues Pacific's discriminatory conduct was a material breach, allowing Breyer to cease performance and file suit. *See Wasserburger v. Am. Sci. Chem, Inc.*, 267 Or. 77, 82 (1973) (material breach excuses injured party from further performance). Oregon follows *Restatement, Contracts* § 275 to determine the materiality of breach. *Weaver v. Williams*, 211 Or. 668, 677–78 (1957). The *Restatement* lists factors which are "influential" in determining the materiality of breach:

> (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) The greater or less hardship on the party failing to perform in terminating the contract;

(e) The wilful, negligent or innocent behavior of the party failing to perform;

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Id.* (quoting *Restatement* § 275).

The *Williams* court found materiality where a party's breach precluded further performance by the injured party. *Id.* at 678–79. In that case, the plaintiff operated a sawmill. Plaintiff was still paying off the purchase price of the mill. Defendant owned timber land, and contracted with plaintiff to deliver installments of logs for milling into lumber. Defendant began to sell his logs to other buyers and did not deliver logs as required under the contract. Because of the defendant's breach, the plaintiff could not make payments on his purchase contract and lost the mill. The *Weaver* court concluded that defendant's breach was material because it precluded the plaintiff from further performance of the contract, even though defendant's failure to deliver an installment did not communicate "renunciation of all future performance under the contract." *Id.* at 675–76.

Breyer's allegations are similar to those in *Williams*. Breyer alleges that Pacific assumed a contractual obligation to provide her with an equal opportunity (presumably equal to a non-disabled peer) to complete the doctoral program. (Compl. ¶¶ 23, 61.) Pacific's administrators made clear to Breyer that she would not be able to complete the program without being able to administer standardized psychological assessments, which Breyer would require an accommodation to

complete. Pacific also required Breyer to pay for her own accommodation, breaching the promise to provide her with an equal opportunity to complete the program as would a non-disabled peer. (*Id.* ¶ 34.) Breyer was unable to afford her own accommodation, preventing her further performance under the contract. (*Id.*)

    *C. Breyer's claim for lost wages is appropriate.*

Because Breyer intends to file an amended complaint remedying her insufficient allegations of Pacific's promises, the court will also address Pacific's argument regarding damages. Pacific contends Breyer's claim for lost wages as a psychologist are unduly speculative. Oregon law requires a contrary conclusion. In a case where the parents of a child born after a failed tubal-ligation procedure sued the doctor who performed the procedure, the Oregon Supreme Court held that the expenses of raising the child to adulthood and paying for a college education were not unduly speculative. *Zehr v. Haugen*, 318 Or. 647. 659 (1994). The court concluded that a plaintiff may plead any foreseeable consequential damages in a breach-of-contract action. *Id.* Just as the full costs of raising a child are foreseeable results of failing to perform a sterilization procedure, lost wages are a foreseeable result from breaching a contract to provide a professional education. Accordingly, Breyer's claim for lost wages is viable at the pleading stage.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

*Conclusion*

Pacific's motion to dismiss (ECF No. 8) is GRANTED, with leave to amend as to the breach-of-contract claim, consistent with this opinion.

IT IS SO ORDERED.

DATED this 9th day of August, 2017.

s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge
